UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS A. VEGA MURGADO,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, *et al.*,<br>Respondents. | Case No. 1:26-cv-5636-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Jesus A. Vega Murgado, a citizen of Cuba, was ordered removed to Cuba by an immigration judge on July 26, 2024, and was detained by ICE for removal before being released on an order of supervision when Cuba refused repatriation. Respondents re-detained petitioner on June 4, 2026, and seek to remove him to Mexico now, but they need his consent, which he refuses to give. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) and 8 U.S.C. § 1231(a)(6) as his removal is not reasonably foreseeable. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

## Background

On August 18, 2021, petitioner, a citizen of Cuba, came to the United States border with his family members and presented himself to immigration authorities.[1] ECF No. 11-7 at 2-3; ECF No. 18 at 5. The Department of Homeland Security ("DHS") took him into custody and then released him into the United States with an order of supervision. *Id.*

On July 26, 2024, an immigration judge ordered petitioner removed to Cuba. ECF No. 11-2 at 3. Petitioner waived appeal, and the order became final. *Id.* at 4. Petitioner stayed in custody for purposes of removal, but Cuba refused to accept him. ECF No. 18 at 5. DHS released petitioner on an order of supervision on December 5, 2024. *Id.*

Local authorities have arrested petitioner since 2024, when he was ordered removed. ECF No. 11-4. On June 4, 2026, ICE apparently re-detained petitioner.[2] ECF No. 11-5 at 2. On July 20, 2026, DHS gave notice to petitioner (although the document bears a different immigrant's name in the certificate of service) that it intended to remove him to Mexico. ECF No. 20-1 at 1. Petitioner was again told of DHS's intent to remove him to Mexico on July 22, 2026, July 29, 2026, August 5, 2026, August 12, 2026, August 19, 2026, and August 21, 2026. ECF No. 20-1 at 4, 7, 10, 13, 16, 21. Each time, petitioner declined to consent to removal to Mexico. *Id.*

## Procedural History

On July 20, 2026, petitioner filed a pro se petition for writ of habeas corpus. ECF No. 1. On July 21, 2026, the court referred the matter to me. ECF No. 8. On August 2, 2026, respondents filed an answer and moved to dismiss the petition. ECF No. 11. In that document, respondents represented to the court that Cuba had issued travel documents for petitioner and that

[1] The DHS Form I-213 completed at the time of this encounter states that petitioner and his family waded across the Rio Grande River into Texas, where they were encountered by immigration agents and taken into custody. ECF No. 11-7 at 2.

[2] The DHS Form I-213 memorializing this re-detention is unreliable. The document in one area refers to petitioner with the name of a completely different female immigrant and uses female pronouns in several sections that do not match other information. *See* ECF No. 11-5 at 2. For example, this document states that petitioner entered the United States at an unknown time near an unknown location, while the arrival time and place are known to DHS and memorialized in a different Form I-213 from 2021. *See* ECF No. 11-7. Accordingly, the court cannot discern how ICE found petitioner. Respondents indicated in ECF No. 11 that ICE encountered petitioner "through a biometrics," which does not resolve the issue. *Id.* at 2.

transportation logistics were being arranged for petitioner's removal to Cuba. ECF No. 11 at 2, 4. No travel documents or information about travel arrangements were provided to the court. *Id.*

On August 12, 2026, the court granted petitioner's motion for appointment of counsel and permitted counsel to file an amended petition. ECF No. 13. Appointed counsel filed a first amended petition for writ of habeas corpus on September 14, 2026. ECF No. 18. Respondents filed an answer on September 21, 2026. ECF No. 20. This answer indicates that respondents seek to remove petitioner to Mexico and says nothing about the travel documents to Cuba that were discussed in the August 2, 2026 filings. ECF No. 11.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner asserts that his removal is not reasonably foreseeable under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), and thus his continued detention is no longer authorized by statute. ECF No. 18 at 8. Respondents concede that "Cuba refused repatriation." ECF No. 20 at 1. Since July 22, 2026, DHS has repeatedly stated its intent to send him to Mexico.[3] ECF No. 20-1 at 1, 4, 7, 10, 13, 16, 21. Although respondents acknowledge that

[3] The government's September 21, 2026 answer does not explain why the first response, filed on August 2, 2026, claimed that Cuba had already issued travel documents and that DHS was arranging transportation logistics. *See* ECF No. 11 at 2, 4 (filed on August 2, 2026). By August 2, 2026, DHS had already notified petitioner multiple times that it intended to remove him

the removal order was final in 2024, they argue that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a), and that this detention is reasonable under *Zadvydas* while the government repeatedly attempts to obtain petitioner's consent to be sent to Mexico, a country to which he has not been ordered removed. ECF No. 20.

In *Zadvydas*, the Supreme Court considered prolonged immigration detention after a final order of removal. Although the government has statutory authority to detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. The Supreme Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal. *Id.* at 701. After the first six months of detention, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Respondents concede that ICE has detained petitioner beyond the 90-day statutory removal period provided in 8 U.S.C. § 1231(a)(2). *See* ECF No. 20 at 2. Accordingly, ICE is currently detaining petitioner under 8 U.S.C. § 1231(a)(6), and *Zadvydas* applies.

On July 26, 2024, an immigration judge ordered petitioner removed to Cuba, which started the Zadvydas' six-month presumptively reasonable period *See* ECF No. 11-2 at 3; *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1)(B)(i). Petitioner was in custody under section 1231 from that date until DHS released him on an order of supervision on December 5, 2024. ECF No. 11-3 at 1. Thus, the government detained petitioner for over four months in 2024.

The six-month presumptively reasonable time-period under Zadvydas "does not reset when the government detains [a non-citizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Aaron H. v. Chestnut*, No. 1:26-cv-1232-TLN-SCR,

to Mexico, not Cuba. ECF No. 20-1 at 1, 4, 7. I cannot find on this record that Cuba ever agreed to take petitioner back or that DHS even tried to repatriate petitioner to Cuba during this detention period.

2026 WL 1398910, at *1 (E.D. Cal. May 19, 2026) (quoting *Sied v. Nielsen*, No. 17-cv-6785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)); *see also Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.").

Immigration authorities held petitioner in custody for over four months in 2024 before releasing him on an order of supervision. This year they have held petitioner for another four months, since June 4, 2026. ECF No. 11-5 at 1. Accordingly, immigration authorities have already detained petitioner beyond the presumptively reasonable six-month period under *Zadvydas*. Both parties have given the court good reason to believe that his removal to Cuba is not reasonably foreseeable. Petitioner alleges that Cuba refused repatriation in 2024. ECF No. 18 at 5. Respondents state that Cuba refused repatriation in 2026. ECF No. 20 at 1.

Respondents argue that petitioner's refusal to consent to removal to Mexico, a country to which he has not been ordered removed, allows them to hold him indefinitely until he does consent, citing *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003). ECF No. 20 at 3. However, *Lema* does not stand for that proposition, as in that case the petitioner was refusing to cooperate with removal to the country in his removal order, not, as here, a country to which he has not been ordered removed. 341 F.3d at 854. However, the record contains no evidence that petitioner engaged in the kind of "intentionally obstructionist, bad faith tactics . . . designed to frustrate the government's attempts to effectuate a removal order." *Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008). Petitioner's removal order is for Cuba, a country that has refused to accept him. Respondents do not allege or present any evidence that petitioner refused to cooperate with its attempt to remove him to Cuba. *See* ECF Nos. 11 & 20. Conversely, petitioner has no removal order to Mexico and there is no requirement that he cooperate with removal to that country.[4] In a

---

[4] In support, respondents cite two cases that mention an agreement between the United States and Mexico for Mexico to accept Cuba nationals removed from the United States. *See* ECF No. 20 at 2 (citing *Navarro v. Lyons*, No. 26-cv-10876-WGY, 2026 WL 816791 (D. Mass. Mar. 25, 2026) and *Sanchez v. Bondi*, No. 25-cv-2573-KKE, 2026 WL 160882 (W.D. Wash. Jan.

similar case, this court recently noted that the government's argument "appears to be that, because [the] petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes [the] respondents' counsel to avoid wasting the court's time and resources with such arguments in the future." *Obando Vargas v. Blanche*, No. 1:26-cv-5343-DAD-AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026). As one district court aptly observed, "[r]espondents may not rely on petitioner's refusal to go along with their improper efforts to remove him to a third country as a basis for denying him habeas relief." *See Boza-Rosales v. Blanche*, 833 F. Supp. 3d 1174, 1178 (W.D. Wash. May 15, 2026).

In *Zadvydas*, the Court directed lower courts to "measure reasonableness . . . in terms of the statute's basic purpose, . . . assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. I find that the evidence before me shows no significant likelihood of removal in the reasonably foreseeable future. As there is no "significant likelihood that petitioner will be removed in the reasonably foreseeable future," his continued detention is unlawful.[5] *See*

---

21, 2026).). Those cases both found fault with the government's intent to hold the Cuban petitioners indefinitely until they agreed to be removed to Mexico. In *Navarro*, the court questioned whether such an "unwritten," "handshake" agreement was "but a stark admission [by the government] that here there's no process at all beyond 'it is what we say it is.'" 2026 WL 816791, at *2-3. In *Sanchez*, the court held that the Cuban petitioner's prolonged detention beyond six months for removal to Mexico was unlawful, as it was contingent on his consent, "which he [was] unwilling to provide." 2026 WL 160882, at *3. Although respondents have provided no other evidence of an agreement between Mexico and the United States, the spate of recent habeas cases involving the attempted removal and prolonged detention of non-consenting Cuban citizens to Mexico certainly suggests that Mexico will only accept removal if the immigrant consents. *See, e.g.*, *Hernandez Betancourt v. Dep't of Homeland Sec.*, No. 1:26-cv-4501-DAD-JDP, 2026 WL 2280948 (E.D. Cal. Aug. 7, 2026); *Torres Cruz v. Chestnut*, No. 1:26-cv-4690-DAD-SCR, 2026 WL 2057108 (E.D. Cal. July 16, 2026); *Palmer-Sardinas v. Chestnut*, No. 1:26-cv-3520-DC-SCR, 2026 WL 2043395 (E.D. Cal. July 15, 2026), *report and recommendation adopted*, 2026 WL 2216044 (E.D. Cal. July 31, 2026).

[5] Respondents attach petitioner's rap sheet and suggest that he should not be released from custody because he is dangerous and violent. *See* ECF No. 11-4; ECF No. 20 at 1. The Court of Appeals has held that "dangerousness cannot justify indefinite detention under *Zadvydas*." *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004); *see also Obando Vargas*, 2026 WL 2056618, at *2 (noting that the court has reminded the respondent's counsel multiple times that "criminal history is not relevant to the inquiry established in *Zadvydas* [] and advised counsel not to clog this court's docket with irrelevant evidence").

*Aaron H.*, 2026 WL 139890, *2; *Hoac v. Becerra*, No. 2:25-cv-1740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025); *Castillo Rivas v. Bondi*, No. 26-cv-0134-KKE, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026) (holding that the petitioner was entitled to release under *Zadvydas* where the petitioner, a Venezuelan national, refused to be removed to Mexico).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.
2. Respondents' motion to dismiss the petition, ECF No. 11, be DENIED as moot.
3. Respondents be ordered to immediately release petitioner (A-Number: 220-574-741) from their custody subject to the previously-imposed conditions of release, if any.
4. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless it obtains a travel document for his removal, if necessary, and follows all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.
5. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.
6. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 5, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE